LEROY *a*. LOWBER.

*Supreme Court, First District ; General Term, November,* 1854.

REFORMATION OF AGREEMENT—PROPER RELIEF.

Upon a dissolution of partnership Lowber offered that Le Roy should take all the assets, excepting certain machinery, upon conditions, that he would pay all the debts of the firm, and that whatever amount should be realized above $20,000 should belong to Lowber ; also promising to furnish a list of assets. This offer was accepted. Lowber subsequently delivered to Le Roy the promised list of assets, in which the condition of the partnership affairs being more unfavorable than he had supposed, he voluntarily included the machinery excepted in his original proposition.

Held, at special term, upon application as to a court of equity to reform the agreement, so that it should vest the machinery in Le Roy, that his proper remedy lay in treating the transactions subsequent to his acceptance of Lowber's offer as a new and distinct agreement substituted for and superseding the original one.

Held, by the general term, overruling this decision, that the proper relief was a decree that the exception in the original agreement reserving the machinery to Lowber was founded in mistake, and should be stricken out ; and that the agreement should be reformed accordingly.

Appeal from a dismissal of complaint.

This action was brought to have a certain agreement of dissolution of partnership between the plaintiff and the defendant, construed as if a certain list of assets were a part of it, or so reformed as to carry into effect the alleged intention of the parties to have the list of assets so considered ; also to have the defendant enjoined from enforcing a certain judgment recovered by him at law in the New York Superior Court against the plaintiff.

The principal facts upon which the application for this equitable relief was granted were as follows :

In July, 1845, Lowber was manufacturing and dealing in lead pipe, and entered into partnership with Jacob Le Roy and his son, Thomas Otis Le Roy, for the continuance of that business.

Jacob Le Roy was special partner, and contributed $25,000 in cash.

Lowber was a general partner, and contributed $23,032 50, of which about $1200 was in cash, and the balance in notes, accounts, stocks, and certain machinery and fixtures. He also immediately drew out from the partnership funds above $8,000.

In March or April, 1846, Lowber informed Jacob Le Roy that the partnership had become embarrassed, and solicited a further advance. Le Roy then made an examination into the accounts, for the first time, as appeared, expressed himself dissatisfied with the management of affairs, refused to go on, and demanded a dissolution.

Lowber then offered to pay the elder Le Roy $20,000 for his interest in the firm, and to secure the debts of the firm. This offer Le Roy accepted. But Lowber not having means to perform it, sent to him a letter dated April 4, 1846, proposing a dissolution upon terms, in substance, that Le Roy should take all the assets of the firm, *not appertaining to the machinery,* and pay the debts of the firm, among which were several claims upon the mill and engine used in the manufacturing; and that defendant should take all machinery and appurtenances then on hand, the arrangement to go into effect Monday, April 6; stipulating in a postscript that all amounts over and above $20,000 which might be realized by Le Roy should be paid over to Lowber. By the messenger who conveyed this letter to Le Roy, Lowber also sent a verbal message promising to furnish him with a schedule of assets which were to come to Le Roy under the proposed arrangement.

Le Roy accepted this proposal.

Upon the 5th of April, which was Sunday, Lowber, in company with his brother, E. J. Lowber, and Smith, an employeé of the firm, proceeded to make out a list of assets to go to plaintiff. It then appeared that so far from realizing twenty thousand dollars, it was not probable that Le Roy could realize more than six or eight thousand, taking both debts and assets to be good; provided the mill and engine employed in the manufacture should be reserved to Lowber as proposed by him. It was then determined upon, as the balance of evidence showed, with Lowber's consent, that the mill and engine should be added to the assets to be transferred to Le Roy. They were accordingly included in the list of assets, which was

Le Roy *a* Lowber.

subsequently delivered to Le Roy; and on Monday, April 6, Le Roy was placed in possession of the assets, the mill and engine being included.

Thomas O. Le Roy and Smith then formed a partnership to continue the business, taking Lowber into their employ to manufacture for them. Their agreement with him treated the mill and engine as belonging to Lowber; but they undertook to pay off the claims upon the machinery which had been assumed by Jacob Le Roy, they to be secured for their advances by a mortgage upon the machinery. They paid off the claims; and Lowber not being able to repay them, they took the mill and engine. So that the claims were not paid by Jacob Le Roy directly, but out of the machinery.

Lowber then sued Le Roy in the New York Superior Court for breach of his agreement of 4th April, to pay those claims. Le Roy offered the list of assets furnished to him by Lowber, in evidence to explain the agreement, and show that the machinery reserved to Lowber was not intended to include the mill and engine. But the court rejected the evidence, as no part of the agreement, and incompetent to vary or explain it, and rendered judgment for the then plaintiff, Lowber.

Le Roy now commenced this action in the Supreme Court, praying a reformation of the agreement, and injunction against any steps to enforce the judgment of the Superior Court. A temporary injunction was granted, and testimony taken before Lucius Robinson, referee, and the cause was tried before Mitchell, J., at special term, in September, 1852.

An opinion was rendered by Mr. Justice Mitchell, in which, after reviewing the evidence at length, he arrived at the following conclusions:

That it was the original agreement that plaintiff should pay the debts of the firm, including the claims upon the machinery referred to, and that defendant should take the mill and engine.

That the subsequent transactions showed that it was afterwards independently agreed that plaintiff should have the mill and engine also; that he transferred them to the firm of Le Roy & Smith; that they sold them to defendant, he assuming to pay the claims to which the machinery was still subject; that, as he had not means to do so, they advanced the funds,

taking the mortgage under which they subsequently took the property.

That the list of assets and the transactions connected therewith should have been offered before the Superior Court as evidence of a new agreement, substituted for that originally made, and not by way of explanation of the original one.

That the plaintiff's proper remedy was, by motion for a new trial before the Superior Court.

That plaintiff was not entitled to have the agreement of the fourth of April reformed as desired, because it was not the real intent of that agreement that the mill and engine should be transferred to him.

That the complaint must be dismissed and the injunction dissolved.

From this decision the plaintiffs appealed to the general term.

*Hiram Ketchum* and *C. Tracy*, for plaintiff.

*C. O'Conor*, for defendant.

ROOSEVELT, J.—The leading object of this suit is, to correct an alleged mistake in a certain agreement between Lowber and Le Roy, set forth in the complaint. Lowber, it seems, before the new Code, sued Le Roy for an alleged breach of the agreement, in the Superior Court, and the latter sought in that court and under the old system of practice, to reform the agreement by way of defence, which, as the law then stood, not being allowed, he now files an affirmative bill in equity for the same purpose, praying also for a temporary, to be followed in the end by a perpetual injunction to stay all further proceedings at law in the action in the Superior Court. The controversy arises out of the dissolution of partnership; Lowber claiming that Le Roy, by the agreement, was to have paid certain debts; that he left them unpaid; and that he, Lowber, was made to pay them, and is entitled, as a consequence, to be reimbursed. Whereas Le Roy insists that the property which went to make the payment, although Lowber's by the original letter of their agreement, was his, Le Roy's, by justice of the case, and by the true ultimate understanding of the parties.

The articles of dissolution are in the form of letters: one

from Lowber, containing his proposition to Le Roy; and the other from Le Roy, containing his answer to Lowber, and both dated the 4th April (Saturday), 1846.

Without reciting all the terms of settlement, it is sufficient to say, that under any interpretation, they were grossly unjust to Le Roy, and (himself being judge) exceedingly liberal to Lowber. Le Roy, who had put in most and taken out nothing, was in general to assume the debts, taking the assets except such as appertained to the machinery, while Lowber, who had put in least (and that in sundries instead of cash,) and already drawn nearly as much as he had advanced, was not only to be discharged from general liability, but to keep the machinery and its appurtenances for himself. " This arrangement," using the language of Lowber's letter, " to take effect on Monday the 6th instant, when all books and assets, will be given into your (Le Roy's) hands." Le Roy, it should be remembered, was not a general partner, but had put in the specific sum of $25,000. The concern had *been in operation* about nine months, and Lowber, as he said, " deeply, most deeply regretted, that they should have made such losses in so early a stage of the partnership." He nevertheless, from motives which he, of course is estopped from saying were not *bona fide,* on the same day, and to the same letter which contained his proposal, appended a postscript apprizing Le Roy, that " the arrangement was upon the express condition that all amounts over and above seventy thousand dollars, which might be realized out of the assets, &c., were to be paid to him, Lowber." This certainly was a pretty strong intimation, and coming from a general to a special partner, almost a guaranteed assurance, that while he, Lowber, was to lose nothing, the loss of his associate under the present arrangement, would and should be limited to five thousand dollars. Even under this assumption, it was a hard bargain, and one which Lowber had no right to impose upon his good-natured friend. Indeed, he appears to have soon became sensible of this himself, for on the very same day he writes another letter to Le Roy, in which he marks out for himself in the future, a course of labor and self-denial: " until I have made up (as he says) my share of the losses of Lowber and Le Roy, so as to

make good the twenty-five thousand dollars invested by yourself."

The arrangement thus explained by Lowber, although instituted on Saturday the 4th, was not to "take effect," it will be recollected, until Monday the 6th. It was inchoate, and so expressly agreed to be, during the interval of the Sabbath. That interval, it appears, the conscience of some of the parties not being perfectly at ease, was devoted, and in this view very properly devoted to self-examination; which resulted in the discovery that a great mistake, and perhaps a great wrong, had been committed, and in a declaration by Lowber, that before the arrangement took effect, it should be rectified and redressed.

The mistake was one of fact. The assets, instead of being as he, Lowber, had given Le Roy to understand, "*over and above twenty thousand dollars*," without the machinery, were found, after exhausting a large portion of the Sabbath in their detailed investigation, at their highest valuation to be under and below *fifteen thousand*, with the machinery. Here then, while the matter was still *in fieri*, before its consummation, was a discovered undisputed error of over $10,000. To rectify it, required, if not a reformation of the party, at least, a reformation of the agreement. The machinery, it was obvious, consistently with any decent regard to fairness or even honesty, could not under those circumstances, be *taken* by Lowber, and the stipulation to that effect must be stricken out or abandoned.

Accordingly on the following day, the Monday on which the assets were to be given into Le Roy's hands, a schedule was furnished on behalf of Lowber, consisting of twelve separate items of property on hand, and among them the "machinery (mill and engine) $5,300." Le Roy, it seems, was the owner of the premises; the delivery therefore of some of the articles, accompanied by the delivery of the schedule, was a delivery of the whole; and in my judgment, it was clearly, at the time, intended so to be, as well by Lowber as Le Roy. The opposite ground assumed by him a year afterwards, was merely an afterthought. And although it may serve to cancel on his part, all claims to credit for an honest amendment, it cannot, without the grossest injustice, deprive Le Roy

of the small modification, which Lowber's previous repentance, (afterwards repented of) had actually conceded. The agreement, it seems to me, was actually reformed by the parties themselves in its execution. It "took effect," not as originally written, but as reformed. It was either a new agreement superseding and incorporating in part only, the letter of the previous day, and made wholly on the day of the consummation and delivery; or it was the correction of a mistake of fact in the previous agreement, and related back to the day of its inception. As a new substituted agreement, it was admissible, (although partly in parol) and was a perfect defence at law to the action in the Superior Court. That court, however, viewed it in a different light, and excluded the evidence as an attempt to vary the legal import of a written instrument by parol proof, or to reform a contract, on the ground of mistake, which as the practice then stood, could only be done by a direct bill in equity. The decision therefore placed in effect, as it was on the ground of a want of jurisdiction adapted to the relief sought, cannot now be invoked, as an estoppel, without manifest injustice. And on the whole merits of the case developed as they have been in the present suit, the judge at special term was himself of the opinion, in which we fully concur, that Lowber, after the discovery and acknowledgment of his mistake, had no just claim to the machinery; that he had indubitably and properly relinquished it to Le Roy; and that in doing so, instead of making a gift, he had only done what a court of equity would then have compelled him to do, and what, having done it voluntarily, a court of equity will now compel him to ratify, and not permit him to recall.

Instead therefore of dismissing the plaintiff's complaint, a decree should be entered, declaring that the provision contained in the agreement of dissolution, that Lowber should take the machinery and its appurtenances, was founded in mistake, and should be stricken out, and the agreement reformed accordingly, and that Lowber be perpetually enjoined from taking any further steps in this action at law referred to in the pleadings, and that he pay the costs of this suit, including the costs of the appeal.

MITCHELL, J.—I remain of the opinion expressed at the special term.